FILED IN OPEN COURT
U.S.D.C. Atlanta

JUN 21 2016

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

    *v.*

OTIS SHANNON (CTS 1-7)
MATTHEW HARRELL (CTS 1-2)
DENISE DIXON (CTS 1 & 3)
GEOVON MARTIN (CTS 4-5)
MARION SIMPSON (CTS 6-7)
SHARON ZELLNER (CTS 8-9)
DERRICK MCDOW (CTS 10-11)
CORTIM MARTIN (CTS 12-13)

Criminal Indictment

No. 1 :16 - C R - 2 1 8

THE GRAND JURY CHARGES THAT:

### Background

At all times relevant to this Indictment:

1. Medicaid was a health insurance program that pays medical bills for eligible low-income families. The program is jointly funded by the federal government and the states. In the State of Georgia, Medicaid was administered by the Georgia Department of Community Health.

2. The Georgia Department of Behavioral Health and Developmental Disabilities (DBHDD) is the state agency that grants or denies approval to mental health and substance abuse treatment providers who intend to treat Medicaid members. Once a provider successfully completes the DBHDD application process, the Georgia Department of Community Health can issue a Medicaid provider number, which enables the provider to bill Medicaid for services.

3. DBHDD was located at 2 Peachtree Street, N.W., Atlanta, Georgia, 30303, in the Northern District of Georgia.

4. DBHDD was an agency of the State of Georgia that received federal assistance in excess of $10,000 during the one-year periods beginning January 1, 2013 and ending on December 31, 2015.

5. Between on or about August 1, 2012 and January 28, 2015, Defendant OTIS SHANNON was employed by DBHDD and was responsible for reviewing provider applications submitted to DBHDD and verifying that the provider employed staff with requisite behavioral health experience, staffing levels, licenses and Medicaid eligibility. SHANNON was also responsible for confirming the provider was registered with the Georgia Secretary of State and had obtained a valid Drug Abuse Treatment and Education Program (DATEP) license.

6. DBHDD required all providers applying to offer Core services, which included drug and substance abuse treatment and counseling, to hold a valid DATEP license before the provider's letter of intent (LOI) was approved. If DBHDD approved the LOI, the provider was invited to submit an application to DBHDD. DATEP licenses were issued and recorded by the Georgia Department of Community Health in the Healthcare Facility Regulation Division (HFRD).

## COUNT ONE
18 U.S.C. § 1349
(Conspiracy to Commit Health Care Fraud)

7. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 as if set forth herein.

8. From at least as early as in or about February 2014, and continuing until in or about May 2015, in the Northern District of Georgia and elsewhere, the defendants, OTIS SHANNON, MATTHEW HARRELL, and DENISE DIXON, did combine, conspire, confederate, agree, and have a tacit understanding with each other and others known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Georgia Medicaid, which is a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, money and property owned by and under the custody and control of Georgia Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Object of the Conspiracy

9. The object of the conspiracy was for the Defendants, OTIS SHANNON, MATTHEW HARRELL, and DENISE DIXON, to obtain funds from Georgia Medicaid under false pretenses. Specifically, the defendants agreed that OTIS SHANNON would use his position with DBHDD to assist Jode Counseling Treatment and Training Services, LLC ("Jode") in obtaining a Georgia Medicaid provider number, based upon false information and falsified documents; then Jode would submit claims to Georgia Medicaid for reimbursement.

3

**Manner and Means**

10. The Defendants, OTIS SHANNON, MATTHEW HARRELL, and DENISE DIXON, along with their co-conspirators, known and unknown, employed the following means and methods, among others, to effectuate the conspiracy charged herein:

11. DBHDD had an "open enrollment" period from February 1, 2014, through February 28, 2014, for new providers to submit LOIs to begin the approval process required before obtaining a Medicaid provider number. During this period, on or about February 26, 2014, an LOI for an entity called "Jode Counseling Training and Treatment Services" was submitted to DBHDD.

12. On or about June 1, 2014, an LOI and supporting application (collectively "the Jode application") was submitted for an entity called "Jode Counseling Treatment and Training Services," which was to have three locations: Douglasville, Columbus, and Savannah, Georgia. In the name of the new entity, the order of the words "Treatment" and "Training" was reversed. (This entity will be referred to as "Jode.")

13. The co-conspirators agreed that HARRELL would operate Jode's Douglasville location and DIXON would operate the Columbus location. The Savannah location was never opened.

14. The Jode application represented that A.B., an associate of HARRELL, was the purported owner of Jode. In fact, A.B. had no experience in mental health services and had merely given his name, Social Security number, and other identifiers to HARRELL to be used for the Jode application.

15. The Jode application contained the above-described false information, as well as additional false statements and documents, including resumes and

4

employee attestation forms from individuals who had never worked for Jode. The documents contained in the Jode application were created, compiled, and reviewed by SHANNON and others.

16. SHANNON also created false DATEP licenses, which DBHDD requires for mental health care providers offering drug or substance abuse treatment or counseling. The falsified Jode DATEP licenses were hanging on the walls of the Douglasville and Columbus locations at the time of the DBHDD site visits, which were required as part of the approval process. The site visits took place on or about July 14, 2014.

17. Based upon the misrepresentations in the Jode application and at the site visits, DBHDD granted approval for Medicaid numbers to be assigned to Jode's two locations on or about July 15, 2014. The Jode office in Douglasville, Georgia, was located at 8335 Office Park Drive, Suites A & B. The Jode office in Columbus, Georgia, was located at 233 12th Street, Suite 735.

18. In exchange for falsifying documents and shepherding the Jode application through the DBHDD approval process, HARRELL paid at least $13,500 to SHANNON. DIXON received a portion of the funds paid to SHANNON.

19. From on or about September 15, 2014, until on or about May 11, 2015, Jode billed over $1 million in Medicaid claims and received approximately $487,000.

All in violation of Title 18, United State Code, Section 1349.


## COUNT TWO
18 U.S.C. § 371
(Conspiracy)

20. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 and 11 through 19 as if set forth herein.

21. In or about February 2014, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendants, OTIS SHANNON and MATTHEW HARRELL, did combine, conspire, confederate, agree and have a tacit understanding with each other, and others known and unknown, to commit certain offenses, namely:

    a. to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, a thing of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions relating to the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d), involving something of value of at least $5,000 and such organization, government, and agency having received federal benefits in excess of $10,000 in a one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

    b. to corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d) that received federal benefits in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such organization,

government, and agency involving anything of value of at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

<u>Overt Acts</u>

22. On or about the dates set forth below, in the Northern District of Georgia, in furtherance of the conspiracy described herein, and to affect the objects and purposes thereof, SHANNON and HARRELL, committed various overt acts, including, but not limited to:

a. On or about March 26, 2014, R.A. Inc., a company owned and controlled by HARRELL, issued a check to SHANNON in the amount of $2,500.

b. On or about April 28, 2014, R.A. Inc., issued a check payable to Behavioral Business Consulting, a company owned and controlled by Otis Shannon, in the amount of $5,000.

c. On or about August 15, 2014, R.A. Inc. issued a check payable to Otis Shannon, in the amount of $6,000.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE
18 U.S.C. § 1349
(Conspiracy to Commit Health Care Fraud)

23. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 as if set forth herein.

24. From at least as early as in or about February 2014, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendants, OTIS SHANNON and DENISE DIXON, did combine, conspire,

confederate, agree, and have a tacit understanding with each other and others known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Georgia Medicaid, which is a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, money and property owned by and under the custody and control of Georgia Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Object of the Conspiracy

25. The object of the conspiracy was for the Defendants, OTIS SHANNON and DENISE DIXON, to obtain funds from Georgia Medicaid under false pretenses. Specifically, the Defendants agreed that OTIS SHANNON would use his position with DBHDD to assist Dengarth Counseling Services, LLC ("Dengarth") in obtaining a Georgia Medicaid provider number based upon false information and falsified documents; then Dengarth would submit claims to Georgia Medicaid for reimbursement.

## Manner and Means

8

26. The Defendants, OTIS SHANNON and DENISE DIXON, along with their co-conspirators, known and unknown, employed the following means and methods, among others, to effectuate the conspiracy charged herein:

27. On or about February 6, 2009, DIXON filed paperwork with the Georgia Secretary of State's Office to register Dengarth Media, LLC.

28. On or about March 4, 2014, an LOI was submitted for a Dengarth location in Macon, Georgia. On April 15, 2014, the locations for Dengarth were amended to Augusta and Brunswick, Georgia.

29. On or about May 22, 2014, DIXON signed a request with the Georgia Secretary of State to reinstate Dengarth Media LLC. On the same date, Dengarth Media, LLC's name was changed to Dengarth Counseling Services, LLC.

30. The Dengarth application contained false statements and documents, including resumes and employee attestations from individuals who had never worked for Dengarth. The documents contained in the Dengarth application were created, compiled, and reviewed by SHANNON and others.

31. The Dengarth application also contained a fraudulent DATEP license. The falsified Dengarth DATEP license was hanging on the wall of the Augusta location at the time of the DBHDD site visit, which was required as part of the approval process. The site visit took place on or about October 15, 2014.

32. On or about November 5, 2014, SHANNON drafted a memorandum recommending the approval of Dengarth's application pending before DBHDD.

33. Based upon the misrepresentations in Dengarth's application and at the site visits, DBHDD granted approval for Medicaid numbers to be assigned to Dengarth's two locations on or about January 22, 2015.

All in violation of Title 18, United State Code, Section 1349.

## COUNT FOUR
18 U.S.C. § 1349
(Conspiracy to Commit Health Care Fraud)

34. The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 6 of this Indictment as if fully set forth herein.

35. From at least as early as in or about February 2014, and continuing until in or about June 2016, in the Northern District of Georgia and elsewhere, the defendants, OTIS SHANNON and GEOVON MARTIN, did combine, conspire, confederate, agree, and have a tacit understanding with each other and others known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Georgia Medicaid, which is a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, money and property owned by and under the custody and control of Georgia Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Object of the Conspiracy

36. The object of the conspiracy was for the Defendants, OTIS SHANNON and GEOVON MARTIN, to obtain funds from Georgia Medicaid under false pretenses. Specifically, the Defendants agreed that OTIS SHANNON would use his position within DBHDD to assist New Progressions, LLC in obtaining a Georgia Medicaid provider number, based upon false information and falsified documents; then New Progressions would submit claims to Georgia Medicaid for reimbursement.

## Manner and Means

37. The Defendants, OTIS SHANNON and GEOVON MARTIN, along with their co-conspirators, known and unknown, employed the following means and methods, among others, to effectuate the conspiracy charged herein:

38. On or about February 7, 2014, MARTIN submitted an LOI to DBHDD for an entity called "New Progressions of Georgia, LLC."

39. On or about February 17, 2014, DBHDD sent correspondence to MARTIN advising him that the LOI was incomplete listing several deficiencies, including the failure to include a current DATEP license.

40. On or about February 27, 2014, MARTIN submitted a new LOI in the name of New Progressions, LLC ("New Progressions").

41. In or about February 2014, SHANNON accepted the New Progressions' LOI without a valid DATEP license. New Progressions did not obtain a valid DATEP license until April 18, 2014.

42. New Progressions' application contained false statements and documents, including resumes and employee attestations from individuals who had never worked for New Progressions. These false and fraudulent documents contained in the New Progressions' application were created, compiled, and reviewed by MARTIN, SHANNON, and others.

43. Based upon the misrepresentations in the New Progressions application, DBHDD granted approval for a Medicaid provider number for an office located at 1298 Rockbridge Road, Suite D, Stone Mountain, Georgia.

44. In exchange for falsifying documents and shepherding the New Progressions application through the DBHDD approval process, MARTIN paid SHANNON approximately $1,000.

45. From on or about September 15, 2014, until in or about June 2016, New Progressions billed over $2.9 million in Medicaid claims and received over $2.8 million.

All in violation of Title 18, United State Code, Section 1349.

### COUNT FIVE
18 U.S.C. § 371
(Conspiracy)

46. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 and 38 through 45 as if fully set forth herein.

47. From at least as early as in or about February 2014, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the

defendants, OTIS SHANNON and GEOVON MARTIN, did combine, conspire, confederate, agree and have a tacit understanding with each other, and others known and unknown, to commit certain offenses, namely:

    a.  to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, a thing of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions relating to the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d), involving something of value of at least $5,000 and such organization, government, and agency having received federal benefits in excess of $10,000 in a one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

    b.  to corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d) that received federal benefits in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such organization, government, and agency involving anything of value of at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

## Overt Acts

48. On or about the dates set forth below, in the Northern District of Georgia, in furtherance of the conspiracy described herein, and to affect the objects and purposes thereof, SHANNON and MARTIN, committed various overt acts, including, but not limited to:

   a. In or about February 2014, SHANNON allowed New Progressions' LOI to be accepted by DBHDD without a valid DATEP license.

   b. On or about June 13, 2014, SHANNON sent an email to a DBHDD employee falsely stating that New Progressions provided documentation of a current DATEP license during the LOI phase of the application process.

   c. On or about June 16, 2014, SHANNON drafted a memorandum recommending the approval of New Progressions' application pending before DBHDD.

   d. In or about 2014, MARTIN paid SHANNON at least $1,000 for his assistance with New Progressions' LOI and application pending before DBHDD.

All in violation of Title 18, United States Code, Section 371.

## COUNT SIX
18 U.S.C. § 1349
(Conspiracy to Commit Health Care Fraud)

49. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 as if fully set forth herein.

50. From at least as early as in or about May 2013, and continuing until in or about December 2015, in the Northern District of Georgia and elsewhere, the defendants, OTIS SHANNON and MARION SIMPSON, did combine, conspire, confederate, agree, and have a tacit understanding with each other and others known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Georgia Medicaid, which is a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, money and property owned by and under the custody and control of Georgia Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Object of the Conspiracy

51. The object of the conspiracy was for the Defendants, OTIS SHANNON and MARION SIMPSON, to obtain funds from Georgia Medicaid under false pretenses. Specifically, the Defendants agreed that OTIS SHANNON would use his position with DBHDD to assist Young Adult Guidance Center, Inc. ("YAGC") in obtaining a Georgia Medicaid provider number based upon false information and falsified documents; then YAGC would submit claims to Georgia Medicaid for reimbursement.

## Manner and Means

52. The Defendants, OTIS SHANNON and MARION SIMPSON, along with their co-conspirators, known and unknown, employed the following means and methods, among others, to effectuate the conspiracy charged herein:

15

53. On or about November 14, 2012, SIMPSON, YAGC's executive director, submitted an LOI to DBHDD to begin the approval process to obtain a Medicaid provider number.

54. On or about, January 31, 2013, DBHDD sent a letter to SIMPSON denying YAGC's LOI because it did not contain a valid DATEP license.

55. On or about May 3, 2013, SIMPSON submitted a new LOI to DBHDD and on or about May 27, 2013, DBHDD notified SIMPSON that the LOI was inadequate because it did not include a copy of a valid DATEP license.

56. On or about August 28, 2013, YAGC's LOI was approved to provide Intensive Family Intervention after SIMPSON notified DBHDD that YAGC would not be offering Core services.

57. In or about 2013, SHANNON created a fraudulent insurance document for YAGC.

58. On or about January 27, 2014, SHANNON authored a memo recommending the approval of YAGC's application for Core Services even after SIMPSON removed Core services from YAGC's LOI and did not have a valid DATEP license at the time he submitted the LOI.

59. The YAGC application also contained false statements and documents, including a resume and an employee attestation from an individual who never worked for YAGC. The documents contained in the YAGC application were created, compiled, and reviewed by SHANNON and others.

60. Based upon the misrepresentations in the YAGC application, DBHDD granted approval for a Medicaid number to be assigned to YAGC.

61. In exchange for falsifying documents and shepherding the YAGC application through the DBHDD approval process, SIMPSON paid approximately $1,150 to SHANNON.

62. From in or about September 18, 2014, until in or about November 30, 2015, YAGC submitted over $99,000 in Medicaid claims and received approximately $98,000.

All in violation of Title 18, United State Code, Section 1349.

## COUNT SEVEN
18 U.S.C. § 371
(Conspiracy)

63. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 and 53 through 62 as if fully set forth herein.

64. From at least as early as in or about May 2013, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendants, OTIS SHANNON and MARION SIMPSON, did combine, conspire, confederate, agree and have a tacit understanding with each other, and others known and unknown, to commit certain offenses, namely:

   a. to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, a thing of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions relating to the

17

Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d), involving something of value of at least $5,000 and such organization, government, and agency having received federal benefits in excess of $10,000 in a one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

b. to corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d) that received federal benefits in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such organization, government, and agency involving anything of value of at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

Overt Acts

65. On or about the dates set forth below, in the Northern District of Georgia, in furtherance of the conspiracy described herein, and to affect the objects and purposes thereof, SHANNON and SIMPSON, committed various overt acts, including, but not limited to:

a. In or about 2013, SHANNON created a fraudulent insurance document for YAGC.

b. In or about 2013, SHANNON accepted YAGC's LOI even though YAGC did not have a valid DATEP license.

18

c. On or about October 30, 2013, SIMPSON paid or directed others to pay SHANNON approximately $750.

d. On or about December 16, 2013, SIMPSON paid or directed others to pay SHANNON approximately $200.

e. On or about November 19, 2014, SIMPSON paid or directed others to pay SHANNON approximately $200.

f. On or about January 27, 2014, SHANNON authored a memo recommending the approval of YAGC's application pending before DBHDD.

All in violation of Title 18, United States Code, Section 371.

## COUNT EIGHT
18 U.S.C. § 1349
(Conspiracy to Commit Health Care Fraud)

66. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 as if fully set forth herein.

67. From at least as early as in or about April 2013, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendant, SHARON ZELLNER and Otis Shannon, did combine, conspire, confederate, agree, and have a tacit understanding with each other others known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Georgia Medicaid, which is a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, money and property owned by and under the custody and control of Georgia Medicaid, in connection with the

delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Object of the Conspiracy

68. The object of the conspiracy was for the defendant, SHARON ZELLNER, to obtain funds from Georgia Medicaid under false pretenses. Specifically, the Defendant agreed that Otis Shannon would use his position with DBHDD to help SBZ Services Unlimited, Inc. ("SBZ") obtain a Georgia Medicaid provider number, based upon false information and falsified documents; then SBZ would submit claims to Georgia Medicaid for reimbursement.

## Manner and Means

69. The Defendant, SHARON ZELLNER, and Otis Shannon, along with their co-conspirators, known and unknown, employed the following means and methods, among others, to effectuate the conspiracy charged herein:

70. On or about April 18, 2013 and April 30, 2013, SBZ, a company owned by ZELLNER, submitted an LOI to provide mental health services for a new location at 198 S. MacArthur Dr., Camilla, Georgia and to start offering drug treatment and counseling services at SBZ's existing location at 125 S. Zack Hinton Pkwy, McDonough, Georgia. SBZ did not submit DATEPS with the LOI.

71. In or about 2013, DBHDD received a DATEP for 198 S. MacArthur Dr. with a permit number 060-115-D. However, this DATEP was fraudulent and not issued by HFRD.

72. On or about August 22, 2013, SBZ's LOI for the 198 S. MacArthur Dr. location was found to be complete and SBZ was invited to continue the application

process with DBHDD, despite the fact that SBZ had not obtained a valid DATEP license.

73. On or about August 26, 2013, ZELLNER signed a Behavioral Health Services Site Inspection Form which fraudulently indicated that SBZ possessed a DATEP license effective from May 17, 2013 for the 198 S. MacArthur Dr. location.

74. On or about November 7, 2013, Otis Shannon recommended the approval of SBZ's application to provide substance abuse services at the 198 S. MacArthur Drive location, despite the fact that he was aware that SBZ did not possess the required DATEP license for this location. SBZ DATEP for 198 S. MacArthur Dr. was not effective until December 23, 2013.

75. On or about October 31, 2014, SBZ summited a new LOI to offer substance abuse services at 125 S. Zack Hinton Pkwy, McDonough, Georgia and 5353 Veterans Pkwy, Suite B, Columbus, Georgia. The LOI contained a fraudulent DATEP for the 5353 Veterans Pkwy.

76. In exchange for allowing SBZ to submit a falsified DATEP, ZELLNER directed an individual to pay $5,000 to Otis Shannon.

77. From on or about November 1, 2013, until in or about May 2016, SBZ billed approximately $2 million in Medicaid claims and received approximately $1.9 million.

All in violation of Title 18, United State Code, Section 1349.

**COUNT NINE**
18 U.S.C. § 371
(Conspiracy)

78. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 and 70 through 77 as if fully set forth herein.

79. From at least as early as in or about April 2013, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendant, SHARON ZELLNER, and Otis Shannon, did combine, conspire, confederate, agree and have a tacit understanding with each other, and others known and unknown, to commit certain offenses, namely:

   a. to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, a thing of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions relating to the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d), involving something of value of at least $5,000 and such organization, government, and agency having received federal benefits in excess of $10,000 in a one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

   b. to corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d) that received federal benefits in excess

of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such organization, government, and agency involving anything of value of at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

### Overt Acts

80. On or about the dates set forth below, in the Northern District of Georgia, in furtherance of the conspiracy described herein, and to affect the objects and purposes thereof, defendant, SHARON ZELLNER, and Otis Shannon, committed various overt acts, including, but not limited to:

   a. In or about 2013, ZELLNER directed others to pay $5000 to Shannon for his assistance in connection with SBZ's LOI and application pending before BHDD.

   b. On or about November 7, 2013, Otis Shannon recommended the approval of SBZ's application to provide substance abuse services at the 198 S. MacArthur Drive location, even though SBZ did not possess the required DATEP license for this location.

All in violation of Title 18, United States Code, Section 371.

### COUNT TEN
18 U.S.C. § 1349
(Conspiracy to Commit Health Care Fraud)

81. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 as if fully set forth herein.

82. From at least as early as in or about September 2014, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendant, DERRICK MCDOW, and Otis Shannon, did combine, conspire,

confederate, agree, and have a tacit understanding with each other and others known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Georgia Medicaid, which is a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, money and property owned by and under the custody and control of Georgia Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Object of the Conspiracy

83. The object of the conspiracy was for the defendant, DERRICK MCDOW, and Otis Shannon, to obtain funds from Georgia Medicaid under false pretenses. Specifically, MCDOW and Otis Shannon agreed that Otis Shannon would use his position with DBHDD to assist Outward Bound Community Services, LLC ("Outward Bound") in obtaining a Georgia Medicaid provider number based upon false information and falsified documents; then Outward Bound would submit claims to Georgia Medicaid for reimbursement.

### Manner and Means

84. The defendant, DERRICK MCDOW, and Otis Shannon, along with their co-conspirators, known and unknown, employed the following means and methods, among others, to effectuate the conspiracy charged herein:

85. On or about, November 7, 2014, MCDOW, Outward Bound's chief executive officer, submitted an LOI to DBHDD.

86. On or about November 24, 2014, DBHDD notified MCDOW that the LOI was inadequate because the clinical director's professional license was expired among other inadequacies.

87. On or about, December 11, 2014, Otis Shannon sent an email to MCDOW on behalf of DBHDD stating that Outward Bound's LOI was complete and invited the provider to submit an application to DBHDD.

88. On or about, January 15, 2015, MCDOW submitted an application to DBHDD.

89. Outward Bound's LOI and application contained false statements and documents, including resumes and employee attestations from individuals who had never worked for Outward Bound. The documents contained in the Outward Bound LOI and application were created, compiled, and reviewed by MCDOW, Otis Shannon, and others.

90. In or about 2014, Otis Shannon created a false DATEP license for Outward Bound's LOI and application to DBHDD.

91. In or about 2014, MCDOW paid $1,500 to Otis Shannon for falsifying documents and shepherding the Outward Bound LOI and application through the DBHDD approval process.

All in violation of Title 18, United State Code, Section 1349.

**COUNT ELEVEN**
18 U.S.C. § 371
(Conspiracy)

92. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 and 85 through 91 as if fully set forth herein.

93. From at least as early as in or about September 2014, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendant, DERRICK MCDOW, and Otis Shannon, did combine, conspire, confederate, agree and have a tacit understanding with each other and others known and unknown, to commit certain offenses, namely:

    a. to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, a thing of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions relating to the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d), involving something of value of at least $5,000 and such organization, government, and agency having received federal benefits in excess of $10,000 in a one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

    b. to corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within

26

the meaning of Section 666(d) that received federal benefits in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such organization, government, and agency involving anything of value of at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

Overt Acts

94. On or about the dates set forth below, in the Northern District of Georgia, in furtherance of the conspiracy described herein, and to affect the objects and purposes thereof, DERRICK MCDOW and Otis Shannon, committed various overt acts, including, but not limited to:

    a.  On or about September 13, 2014, MCDOW paid or directed others to pay Otis Shannon $1,500.

    b.  In or about 2014, Otis Shannon created a false and fraudulent DATEP license for Outward Bound.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWELVE**
18 U.S.C. § 1349
(Conspiracy to Commit Health Care Fraud)

95. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 as if fully set forth herein.

96. From at least as early as in or about March 2014, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendant, CORTIM MARTIN, and Otis Shannon, did combine, conspire,

confederate, agree, and have a tacit understanding with each other and others known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Georgia Medicaid, which is a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, money and property owned by and under the custody and control of Georgia Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Object of the Conspiracy

97. The object of the conspiracy was for the defendant, CORTIM MARTIN, and Otis Shannon, to obtain funds from Georgia Medicaid under false pretenses. Specifically, CORTIM MARTIN and Otis Shannon agreed that Otis Shannon would use his position within DBHDD to assist Positive Directions Counseling & Behavioral Health Services, Inc. ("Positive Directions") in obtaining a Georgia Medicaid provider number based upon false information and falsified documents; then Positive Directions would submit claims to Georgia Medicaid for reimbursement.

### Manner and Means

98. The defendant, CORTIM MARTIN, and Otis Shannon, along with their co-conspirators, known and unknown, employed the following means and methods, among others, to effectuate the conspiracy charged herein:

99. On or about, October 28, 2014, MARTIN, owner of Positive Directions, submitted an LOI to DBHDD to begin the approval process to obtain a Medicaid provider number.

100. The Positive Directions LOI and application contained false statements and documents, including a resume and employee attestation forms from individuals who had never worked for Positive Directions. The documents contained in the Positive Directions application were created, submitted and/or reviewed by MARTIN, Otis Shannon and others.

101. In or about 2014, Otis Shannon created a false DATEP license for the Positive Directions LOI and application.

102. Based upon the misrepresentations in Positive Direction's LOI, DBHDD accepted Positive Directions LOI and allowed the provider to submit an application.

103. On or about September 25, 2014, MARTIN paid or directed others to pay Otis Shannon approximately $7,000 for falsifying documents and shepherding Positive Directions' LOI and application through the DBHDD approval process.

All in violation of Title 18, United State Code, Section 1349.

## COUNT THIRTEEN
18 U.S.C. § 371
(Conspiracy)

104. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 6 and 99 through 103 as if fully set forth herein.

105. From at least as early as in or about September 2014, and continuing until in or about February 2015, in the Northern District of Georgia and elsewhere, the defendant, CORTIM MARTIN, and Otis Shannon, did combine, conspire, confederate, agree and have a tacit understanding with each other and others known and unknown, to commit certain offenses, namely:

    a. to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, a thing of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions relating to the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within the meaning of Section 666(d), involving something of value of at least $5,000 and such organization, government, and agency having received federal benefits in excess of $10,000 in a one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

    b. to corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of the Georgia Department of Behavioral Health and Developmental Disabilities, which is an organization, government, and agency within

the meaning of Section 666(d) that received federal benefits in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such organization, government, and agency involving anything of value of at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

<u>Overt Acts</u>

106. On or about the dates set forth below, in the Northern District of Georgia, in furtherance of the conspiracy described herein, and to affect the objects and purposes thereof, CORTIM MARTIN and Otis Shannon committed various overt acts, including, but not limited to:

    a. On or about September 25, 2014, MARTIN paid or directed others to pay Otis Shannon approximately $7,000.

    b. In or about 2014, Otis Shannon created a false and fraudulent DATEP license that was included in Positive Directions' LOI.

All in violation of Title 18, United States Code, Section 371.

## Forfeiture Provision

107. Upon conviction of one or more of the offenses alleged in Counts One Through Thirteen of the Indictment, the Defendants, OTIS SHANNON, MATTHEW HARRELL, DENISE DIXON, GEOVON MARTIN, MARION SIMPSON, SHARON ZELLNER, DERRICK MCDOW, AND CORTIM MARTIN, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the Federal health care offenses or a conspiracy to commit such offenses, including, but not limited to, the following:

- MONEY JUDGMENT: A sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable.

108. Upon conviction of one or more of the offenses alleged in Counts One, Three, Four, Six, Eight, Ten, and Twelve of the Indictment, the Defendants, OTIS SHANNON, MATTHEW HARRELL, DENISE DIXON, GEOVON MARTIN, MARION SIMPSON, SHARON ZELLNER, DERRICK MCDOW, AND CORTIM MARTIN, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the health care fraud offenses or a conspiracy to commit such offenses including, but not limited to, the following:

- MONEY JUDGMENT:  A sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable.

A _____ BILL

_____
FOREPERSON

JOHN A. HORN
   *United States Attorney*

JEFFREY A. BROWN
   *Assistant United States Attorney*
Georgia Bar No. 088131
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

ROBIN DAITCH
   *Special Assistant United States Attorney*
Georgia Bar No. 376288
Georgia Medicaid Fraud Control Unit
Office of the Attorney General
200 Piedmont Avenue, S.E.
19th Floor West Tower
Atlanta, Georgia 30334
404-656-7811